In the Matter of Lemmon Beasley MOR-
RIS and Melba Jean Morris, formerly
Melba Jean Pruitt, Debtors, Plaintiffs,

v.

THRIFT CREDIT UNION, Defendant.

Bankruptcy No. 80–0047G.

United States Bankruptcy Court,
N. D. Georgia.

Nov. 4, 1981.

Gerry Shugart, Alpharetta, Ga., for plaintiffs.

Allen Broxton, Telford, Stewart & Stephens, Gainsville, Ga., for defendant.

## INTRODUCTION

WILLIAM L. NORTON, Jr., Bankruptcy Judge.

Lemmon Beasley Morris and Melba Jean Morris (hereinafter the "Debtors") filed a joint petition in bankruptcy on October 2, 1980. The Debtors exempted their interest in a 1978 Mazda automobile in which Thrift Credit Union (hereinafter "Thrift") held a security interest. Thrift would not allow the Debtors to reaffirm the indebtedness on the automobile. On December 12, 1980, the debtors filed an adversary proceeding under § 722 of the Bankruptcy Code to redeem the automobile.

## FINDINGS OF FACT

At trial the following facts were established.

On November 3, 1977, Thrift loaned L.B. Morris $4,350.00. The loan was secured by the Mazda automobile. The security agreement executed by Morris contained the following clause.

This conveyance is made by me to secure the above debt, evidenced by my note payable to the order of the corporation and executed this date to secure any renewal or extension of said debt, and to secure any other or future debt which I may owe the corporation. Title to said automobile shall remain in the corporation or its assigns until all such indebtedness is fully paid, this Bill of Sale marked satisfied, and the interest of the corporation is terminated of record; . . .

On February 9, 1979, Thrift loaned L.B. Morris $1,000.00. This loan was unsecured. On October 10, 1979 Thrift loaned L.B. Morris $2,800.00. This loan was also unsecured.

## CONCLUSIONS OF LAW

The Debtors' contention is that the loans made on February 9, 1979 and October 10, 1979 were separate independent transactions which have no relation to the loan of November 3, 1977, and the interest given in the Mazda automobile as security for that loan. This argument contrasts with the above-quoted provision in the security agreement.

Thrift maintains that the quoted provision in the 1977 security agreement is in

effect as to the subsequent loans and cites as authority *Maloy v. C&S National Bank,* 139 Ga.App. 798, 229 S.E.2d 678 (1976). In *Maloy* the first note and security agreement were given to secure all obligations of the borrower to the holder "now or hereafter existing." The Georgia Court of Appeals held:

> The granting and giving of the security interest in the Volkswagen bus in the first instrument as security for other and future debts owed the defendant was valid to accomplish such purpose. Code § 109A–9—204(5). 139 Ga.App. at 799, 229 S.E.2d 678.

The Debtors argue that *Maloy* is distinguishable. The Debtors point out that while the second note in *Maloy* was silent as to security, the second and third notes in this case expressly deal with the issue of security. They point out that the note dated October 10, 1979, in the box designated Description of Collateral the blank labeled other collateral, has typed in it "regular signature." The Defendants point out that Paragraph 7 of the note dated February 9, 1979 provides as follows:

> 7. No security shall be required hereunder if the outstanding balance after an advance does not exceed

> $ 1,000.00

> In other cases, security consisting of one or a combination of the following will be required:
> (1) A co-maker or guarantor,
> (2) A pledge of shares and/or deposits,
> (3) An assignment of wages,
> (4) A security interest under the Uniform Commercial Code or other governing law.

The Debtors maintain that this paragraph 7 precludes Thrift from holding, as security for this loan, the security preserved for future loans by the first November 3, 1977 security agreement.

This court agrees with the Debtors regarding both contracts. Should these provisions have been ambiguous under Georgia law of contracts they would be construed most strongly against the maker. *Small Company v. Claxton,* 1 Ga.App. 83, 57 S.E.2d 977 (1907), Ga.Code § 20–704(5). These notes are not ambiguous; rather both set forward that there should be no security for the loans they evidence. They are purely unsecured signature loans. This case is distinguishable from *Maloy* because, although these subsequent loan agreements are silent as to the prior security agreement, they provide in express and clear terms that there will be no security for the loans. The automobile is security only for the November 3, 1977 note.

Section 722 provides that "An individual debtor may, . . . redeem tangible personal property . . . from a lien securing a dischargeable consumer debt, . . . by paying the holder of such lien the amount of the allowed secured claim . . . . Thrift submitted a claim showing $925.90 as secured and $2,857.16 as unsecured. It later amended its claim to show the entire amount as secured. Since this court holds that the later two notes are unsecured the maximum necessary to redeem the vehicle is $925.90.

The debtor shall pay that amount to the creditor as redemption within 30 days from this order or the debtor shall thereafter surrender the collateral to the creditor.

By order of this court filed January 14, 1981 Thrift was allowed to retain $509.48 of the Debtors' funds which it held pending further hearing on Debtor's claim against Thrift for such funds. A hearing will be set to determine if this sum should be returned to Debtor or may reduce the amount necessary to redeem the vehicle.

In accordance with Bankruptcy Rule 921(a), a separate order will be entered consistent with the above opinion.